UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cyril Anuforo,                                           Civil No. 07-1756 (JRT/FLN)

       Plaintiff,

       v.                                          **ORDER AND REPORT AND RECOMMENDATION**

Commissioner of Internal Revenue Service,

       Defendant.

---

Chinedu Nwaneri for Plaintiff.
Shana Starnes for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on August 29, 2008 on:

1. Defendant's Motion for Summary Judgment [#88];

2. Plaintiff's Motion to Dismiss for Lack of Jurisdiction [#97];

3. Plaintiff's Motion to Compel Deposition Testimony of Jill Dutcher [#112 and #114].

The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court:

     A. ORDERS that Plaintiff's Motion to Compel Deposition Testimony of Jill Dutcher [#112 and #114] is DENIED.

     B. RECOMMENDS that:

         1. Defendant's Motion for Summary Judgment [#88] be GRANTED.

         2. Plaintiff's Motion to Dismiss for Lack of Jurisdiction [#97] be DENIED.

1

I.      **FINDINGS OF FACT**

     A.      **Procedural Background.**

The Plaintiff Cyril C. Anuforo owned and operated two home health care companies, Comfort Plus Health Care Corporation ("Comfort Plus") and U.S. Central Comfort Plus ("U.S. Central") which failed to consistently pay employment taxes. On February 15, 2005, after Plaintiff had defaulted on an installment plan to pay unpaid employment taxes, the IRS assessed penalties against Anuforo relating to U.S. Central totaling $39,758.05. On December 26, 2005, the IRS assessed penalties against Anuforo relating to Comfort Plus in the amount of $175,235.95.

Plaintiff filed this lawsuit on April 3, 2007, seeking a declaration that 1) the trust fund recovery penalties assessed against him concerning *Comfort Plus only* were time barred, null and void; and (2) that he was not liable for the trust fund recovery penalties assessed relating to *Comfort Plus*. On November 13, 2007, the IRS brought a motion for summary judgment which was granted by Judge Tunheim on September 30, 2008. (*See* Dkt. 140.)

On December 21, 2007, after the IRS brought its first motion for summary judgment, Plaintiff amended his complaint to include relief from the penalties assessed relating to his other company, *U.S. Central*. (Dkt. 30.) On December 31, 2007, the IRS counterclaimed, seeking to reduce to its assessments against Anuforo relating to both companies to judgment. (Dkt. 32.)

On May 29, 2008, Plaintiff filed a motion to dismiss for lack of jurisdiction with respect to the IRS' counterclaims. (Dkt. 66.) On June 30, 2008, the IRS filed its second motion for summary judgment with respect to the penalties assessed against Anuforo that pertain to U.S. Central. (Dkt. 88.) The Plaintiff's Motion to Dismiss and the IRS' Second Motion for Summary

Judgment are the subject of this Report and Recommendation.

      **B.**    **U.S. Central's Failure to Pay all Employment Taxes Owed.**

U.S. Central did not consistently pay its employment taxes beginning in the first quarter of 1998. (Second Declaration of Jill Dutcher ¶ 3 (hereinafter "Dutcher Decl.").) In 1998, U.S. Central did not fully pay employment taxes for the quarters ending March 31 and September 31. (Dutcher Decl. ¶ 3.) As of October 1998, U.S. Central had failed to file a return for the quarter ending June 30, 1998. (*Id.*) As of May 1999, U.S. Central had filed a tax return for the period ending December 31, 1998, but did not pay all of the taxes owed. (*Id.*) The IRS mailed a notice of levy to collect the taxes owed for the last quarter of 1998 on April 12, 1999. In response, U.S. Central requested a collection due process hearing in an attempt to stop the collection action. (Dutcher Decl. ¶ 5.)

On January 25, 2000, the IRS Appeals Office rejected the proposed installment agreement to pay the 1998 tax liability because U.S. Central had not timely filed its 1999 employment tax returns and had not paid its 1999 tax liability in full. (Dutcher Decl. ¶¶ 8-10.)

On July 25, 2000, the IRS accepted U.S. Central's proposed installment agreement to pay second and third quarter 1999 delinquent employment taxes. (Dutcher Decl. ¶¶ 11-13.)

On March 22, 2002, the IRS notified U.S. Central by letter that it had defaulted on its installment agreement because it had failed to make timely payments under the plan and it had not remained current on its employment tax return filing for periods that were not covered under the plan. (Dutcher Decl. ¶ 19.)

On June 4, 2002, the IRS received a letter from U.S. Central stating that two of its employees had stolen money and requested that the IRS cease collection activity pending the

outcome of the investigation. (Dutcher Decl. ¶ 20; Dkt. 18, Affidavit of Cyril Anuforo at ¶ 6.) In making his request, Anuforo provided the IRS with the offending employees' probation agreements. One employee admitted to stealing $50,861.24 from Comfort Plus - not U.S. Central - between April 27, 2001 and January 18, 2002 and as part of her probation, was required to repay $165,040.74. (Anuforo Aff. at Ex. A.) The other employee admitted to stealing around $20,000 from Comfort Plus and U.S. Central between August 15, 1999 and 2001 and repaid that amount by the time he plead guilty on March 15, 2003. (Anuforo Aff. at Ex. B, Ex. K, Deposition of Elvis Abanonu at 28.) Only three of the periods at issue in this case overlap with the time periods the employees stole money - the third quarter of 1999 and the first and third quarters of 2001.

Despite having funds stolen, U.S. Central was still able to pay other expenses. Dutcher Decl. ¶¶ 38-40, Ex. 1 (paid $86,235 in wages in quarter ending June 30, 1999), 3 (paid $98,852 in wages in quarter ending September 30, 1999), 5 (paid $73,720 in wages in quarter ending March 31, 2001), 8 (paid $89,607 in wages in quarter ending September 30, 2002), 10 (paid $20,988 in wages in quarter ending December 31, 2002)), 12 (paid $17,420 in wages in quarter ending March 31, 2003). Anuforo also admitted that while federal employment taxes went unpaid, he authorized the payment of payroll, medicare, workers' compensation, debt, rent, supplies and state taxes. (Dutcher Decl. Ex. 15.)

The quarters at issue in this case are summarized in the chart below:

| Quarter Ending | Amount of Tax Return Reports Due | Amount Return Reports Paid | Return Filing Delinquent | Corporate Officer who Signed Return |
|---|---|---|---|---|
| 06/30/1999 | $17,958 | $0 | yes, 5 months | Cecilia Anuforo[1] |
| 09/30/1999 | $20,476 | $0 | yes, 2 months | Cyril Anuforo[2] |
| 03/31/2001 | $15,901 | $0 | yes, 8 months | Cyril Anuforo[3] |
| 12/31/2001 | $8,344 | $2500 | no | Cecilia Anuforo[4] |
| 09/30/2002 | $16,902 | $1000 | yes, 1 year | Cyril Anuforo[5] |
| 12/31/2002 | $2,775 | $0 | yes, 1 year | Cyril Anuforo[6] |
| 03/31/2003 | $1,841 | $0 | yes, 1 year | Cyril Anuforo[7] |

On February 15, 2005, after U.S. Central defaulted on the installment plan to repay delinquent employment taxes, the IRS assessed trust fund penalties under 26 U.S.C. § 6672 as follows:

| Quarter Ending | Amount |
|---|---|
| 06/30/1999 | $11,361.03 |
| 09/30/1999 | $9,747.60 |
| 03/31/2001 | $401.23 |
| 12/31/2001 | $5,465.51 |
| 09/30/2002 | $10,103.01 |
| 12/31/2002 | $1,619.81 |

---

[1] Dutcher Decl. ¶¶ 21-22, Ex. 1-2.

[2] Dutcher Decl. ¶¶ 23-24; Ex. 3-4.

[3] Dutcher Decl. ¶¶ 25-26; Ex. 5-6.

[4] Dutcher Decl. ¶¶ 27, 35; Ex. 7, 14.

[5] Dutcher Decl. ¶¶ 28-29; Ex. 8-9, 14.

[6] Dutcher Decl. ¶¶ 30-31; Ex. 10-11.

[7] Dutcher Decl. ¶¶ 32-34; Ex. 12-13.

| | |
|---|---|
| 03/31/2003 | $1,059.86 |
| Total | $39,758.05[8] |

### C. Anuforo's Role in U.S. Central.

In an IRS Form 4180, Cyril Anuforo identified himself as the president of U.S. Central. (Dutcher Decl. at Ex. 15.) On the same form, he stated that he was the 100% shareholder in the company and that he was the only person at the company responsible for: hiring/firing employees, managing employees, directing payment of bills, dealing with major suppliers/customers, negotiating large corporate purchases, contracts, loans, opening/closing corporate bank accounts, guaranteeing/co-signing corporate bank loans, making/authorizing deposits, authorizing payroll checks, **preparing federal payroll tax returns, and authorizing payment of federal tax deposits and determining company financial policy**. (*Id.*) Further, Anuforo admitted in the Government's requests for admission that he was a responsible person within the meaning of IRC § 6672. (Starnes Decl. ¶ 3, Ex. A at 3, Q#12.)

## II. ANALYSIS

### A. Defendant's Motion for Summary Judgment [#88] Must be Granted

#### 1. Standard of Review

According to Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, " it is the substantive law's identification of which

---

[8] Dutcher Decl. ¶¶ 41-42; Ex. 16.

facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

**2.    Statutory Background.**

Pursuant to 26 U.S.C. §§ 3102, 3402, an employer is required to withhold FICA and federal income taxes from its employees' wages. These taxes collected by the employer are deemed to be held in trust for the federal government and must be paid to the IRS on at least a quarterly basis. 26 U.S.C. § 7501; *Honey v. United States*, 963 F.2d 1083, 1087 (8th Cir. 1992). Employers who fail to pay employment taxes are subject to penalties under 26 U.S.C. § 6672(a)

which provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who wilfully fails to collect such tax, or truthfully account for and pay over such tax, or wilfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the amount of the tax evaded or not collected or not accounted for and paid over.

In order for liability under § 6672 to attach, an individual must: (1) be a responsible person; and (2) have willfully failed to pay over taxes to the United States. *Olsen v. United States*, 952 F.2d 236, 238 (8th Cir. 1991).

"A section 6672 assessment is presumed correct, and it is the individual's burden to show, in a refund action, that he or she was not a responsible person or did not willfully fail to pay over taxes." *Riley v. United States*, 118 F.3d 1220, 1221 (8th Cir. 1997).

    **a.**    **Anuforo Was Responsible Person Within the Meaning of § 6672.**

The term "person" for the purposes of § 6672 "includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671. It is however not necessary for a person to be assigned the ministerial duties of keeping the books or paying taxes or withholding employment taxes in order to be liable under § 6672. *Hartman v. United States*, 538 F.2d 1336, 1340 (8th Cir. 1976). "Recognized indicia of status as a responsible person include membership on the board of directors, ownership of stock in the corporation, the authority to write and sign checks on the corporate accounts, and other significant authority such as the authority to hire and fire personnel." *In re Grubbe*, 1994 WL 249792 (Bankr. D. Minn. Jul. 7, 1994) (citations omitted).

In his Answers to Requests for Admission, Anuforo admits that he was a responsible

person under 26 U.S.C. § 6672.  Further, in an IRS Form 4180, Cyril Anuforo identified himself as the president of U.S. Central.  (Dutcher Decl. at Ex. 15.)  On the same form, he stated that he was the 100% shareholder in the company and that he was the only person at the company responsible for: hiring/firing employees, managing employees, directing payment of bills, dealing with major suppliers/customers, negotiating large corporate purchases, contracts, loans, opening/closing corporate bank accounts, guaranteeing/co-signing corporate bank loans, making/authorizing deposits, authorizing payroll checks, preparing federal payroll tax returns, authorizing payment of federal tax deposits and determining company financial policy. (*Id*.)

    **b.**  **Anuforo Acted Willfully in Failing to Pay U.S. Central's Employment Taxes.**

"A responsible person acts willfully within the meaning of § 6672 whenever he 'acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes . . . '" *Olsen v. United States*, 952 F.2d 236, 239 (8th Cir. 1991) (citations omitted).  "The term willfully does not connote a bad or evil motive, but rather means a voluntary, conscious and intentional act, such as payment of other creditors in preference to the United States."  *Elmore v. United States*, 843 F.2d 1128, 1132 (8th Cir. 1988).

  Anuforo admitted that he was the person responsible for paying federal employment taxes.  Beginning in 1998, he was in relatively frequent communication with the IRS as he negotiated not one but two installment agreements to pay delinquent taxes.  As those negotiations to pay for taxes from prior years went on, U.S. Central fell behind on its current employment taxes.  It strains credulity that Anuforo was unaware he was not paying his current employment taxes as he conducted negotiations with the IRS to implement an installment

agreement to pay taxes owing from previous years.

Furthermore, Anuforo admitted that he continued to pay other creditors while his tax liabilities grew. He admitted in an IRS Form 4180 that he continued to pay the state of Minnesota, rent, workman's compensation and payroll in addition to buying supplies in the periods where U.S. Central paid no employment taxes. (*See* Dutcher Decl. ¶¶ 38-40, Ex. 1 (paid $86,235 in wages in quarter ending June 30, 1999), 3 (paid $98,852 in wages in quarter ending September 30, 1999), 5 (paid $73,720 in wages in quarter ending March 31, 2001), 8 (paid $89,607 in wages in quarter ending September 30, 2002), 10 (paid $20,988 in wages in quarter ending December 31, 2002)), 12 (paid $17,420 in wages in quarter ending March 31, 2003). Despite having funds stolen, U.S. Central was still able to pay other expenses. Dutcher Decl. ¶¶ 38-40, Ex. 1 (paid $86,235 in wages in quarter ending June 30, 1999), 3 (paid $98,852 in wages in quarter ending September 30, 1999), 5 (paid $73,720 in wages in quarter ending March 31, 2001), 8 (paid $89,607 in wages in quarter ending September 30, 2002), 10 (paid $20,988 in wages in quarter ending December 31, 2002)), 12 (paid $17,420 in wages in quarter ending March 31, 2003)).

Anuforo's argument that he should not be liable for the tax liabilities because his employees stole money from Comfort Plus is untenable. His argument is properly characterized as a reasonable cause defense. The Eighth Circuit has held that "reasonable cause is no part of the definition of willfulness." *United States v. Strebler*, 313 F.2d 402, 403 n.2 (8th Cir. 1974). More specifically, an employee's embezzlement of funds is not a legally recognized defense absolving a company's obligation to pay taxes. *In re Schroeder*, 1994 WL 527177 (Bkrtcy. D. Neb. 1994) ("[taxpayer] does not have a legally recognizable defense to the claims of the I.R.S.

Once the embezzlement occurred, [the taxpayer] did not have the legal option to pass his losses on to the taxpayers of the United States.")[9]

In this case, Anuforo did not have the legal option to pass U.S. Central's losses on to the taxpayers of the United States. In addition, only three periods at issue overlap with the time periods that the employees were stealing money, the third quarter of 1999 and the first and third quarters of 2001.

Anuforo's final argument is that the motion for summary judgment should not be granted because the amount owed is in dispute. Anuforo claims he is entitled to a theft-loss deduction and overpayment refund which would offset the $39,708.05 penalty. In support of this argument, Plaintiff cites to two cases, *United States v. Kearns*, 177 F.3d 706 (8th Cir. 1999) and *In re Dunhill Medical, Inc.,* 1996 WL 354696, at *1 (Bankr. D.N.J. March 27, 1996). Those cases stand for the proposition that where the IRS files a proof of claim in a bankruptcy proceeding, the debtor is eligible to have a tax refund question determined by the court without first filing a refund request with the IRS. *Kearns*, 177 F.3d at 711. These cases do not provide guidance here because this is not a bankruptcy proceeding. Further, Plaintiff has presented no other law or evidence establishing that, at this stage, he would be entitled to such a deduction and has presented no evidence showing whether such a deduction would affect the government's claim. Such unsubstantiated assertions do not raise a genuine issue of material fact. Plaintiff's argument must be rejected.

    **B.**    **Plaintiff's Motion to Dismiss Must be Denied**.

---

[9] Section B of this Report and Recommendation addressing Anuforo's Motion to Dismiss rejects further arguments that Anuforo makes both in opposition to the IRS' Motion for Summary Judgment and in Plaintiff's Motion to Dismiss.

Plaintiff claims that the IRS' counterclaims should be dismissed for lack of jurisdiction. The IRS' claims seek to reduce to judgment the federal tax assessments made against the Plaintiff. Plaintiff contends that the IRS' first counterclaim, which relates to U.S. Central, should be dismissed because the IRS failed to give Plaintiff sixty days notice before assessing penalties, as required under 26 U.S.C. § 6672(b). Plaintiff contends that the IRS' second counterclaim, which relates to Comfort Plus, should be dismissed because the IRS did not present proof that it actually assessed penalties against the Plaintiff within three years, as required under 26 U.S.C. § 6501(a).

### 1. Counterclaim Relating to Comfort Plus (Count Two).

Judge Tunheim has already granted summary judgment on Count Two of the IRS' Counterclaim (a claim to reduce the assessment against Anuforo relating to Comfort Plus to judgment). Plaintiff's motion to dismiss that claim is therefore moot.

Furthermore, Plaintiff's arguments concerning this counterclaim have already been rejected by Judge Tunheim. In Judge Tunheim's September 30, 2008 Order Affirming and Adopting Order and Report and Recommendation, the Court rejected Plaintiff's contention that the Court lacked jurisdiction because the IRS failed to prove that it made an actual assessment. (*See* Dkt. No. 140 at 6-7.) The Court also concluded that the assessments made were timely. (*Id*.) Plaintiff is not entitled to a second bite at the apple.

### 2. Counterclaim Relating to U.S. Central (Count One).

Plaintiff claims that the IRS failed to give 60 days notice before assessing penalties and therefore they are time-barred. 26 U.S.C. § 6501(a) provides that any tax imposed by the IRS under Title 26 must be assessed within three years after the return was filed. Social security

taxes (imposed under Chapter 21 of the tax code) and employee withholding taxes (imposed under Chapter 24 of the tax code), which are reported quarterly on Form 941, are deemed filed on April 15 of the succeeding year. 29 U.S.C. § 6501(b)(2) ("if a return of tax imposed by chapters 3, 21, or 24 for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, such return shall be considered filed on April 15 of such calendar year.")

On February 14, 2005, the IRS assessed taxes on Plaintiff for failure to pay social security taxes and employee withholding taxes for employees working for U.S. Central. The IRS assessed taxes for the quarters ending: June 30, 1999; September 30, 1999; March 31, 2001; December 31, 2001; September 30, 2002; December 31, 2002; and March 31, 2003. (Dutcher Decl. at Ex. 1.) Plaintiff claims that the assessments made for quarters ending March 31, 2001, and December 31, 2001, are time-barred. Pursuant to 29 U.S.C. § 6501(b)(2), these taxes are deemed filed on April 15 of the succeeding year - April 15, 2002 in this case. The IRS had three years, beginning on April 15, 2002. and ending on April 15, 2005, to make assessments. The assessments were made on February 14, 2005, a full two months before the April 15 cutoff and therefore they are not time-barred. Plaintiff's motion to dismiss must be denied.

### 3. Plaintiff's Defense Regarding Employee Embezzlement Must be Rejected.

Plaintiff also argues in this motion that he is not liable for the taxes because two of his employees stole money from him. Both this Court and Judge Tunheim have previously rejected this argument. In Judge Tunheim's September 30, 2008, Order, he concludes "[t]here is no legally recognized reasonable cause defense . . . for a willful failure to pay taxes." (Dkt. 140 at 8.)

In the latest iteration of Plaintiff's argument, he cites to three cases which are unhelpful because they address statutes that are not at issue here. In this case, the IRS brought its action for trust fund recovery penalties under 26 U.S.C. § 6672, which does not provide for a reasonable cause defense. Plaintiff cites to *In the Matter of American Biomaterials Corp.*, 954 F.2d 919, 921 (3d Cir. 1992), for the proposition that he may assert a reasonable cause defense, however, in that case, the IRS sought recovery of taxes under 26 U.S.C. § 6651 and § 6656, both of which explicitly provide for a reasonable cause defense. As the Eighth Circuit has held, 26 U.S.C. § 6672 does not provide for a reasonable cause defense. *United States v. Strebler*, 313 F.2d 402, 403 n.2 (8th Cir. 1974). The other two cases cited by Plaintiff are not on point either. In *United States v. Ridglea State Bank*, 357 F.2d 405 (5th Cir. 1966), the court held that a bank was not liable for forfeitures and double damages under False Claims Act resulting from officer misconduct. In this case, the IRS did not bring a claim under the False Claims Act; it brought a claim under 26 U.S.C. § 6672. *Genty v. Resolution Trust Corp*, 937 F.2d 899 (3d Cir. 1991) involved a claim brought under RICO.

    **C.**    **Plaintiff's Motion to Compel Deposition Testimony of Jill Dutcher is Denied.**

Plaintiff seeks for the second time to compel the deposition testimony of Jill Dutcher. That motion is denied. Anuforo contends that he needs to take the deposition of Ms. Dutcher because "it is very material and essential" to rebutting the IRS' motion for summary judgment. Yet, in his memorandum in support of his motion to compel, he does not explain which testimony he seeks or how such testimony is material or essential. Nor is there anything in the "Plaintiff's Reply to Defendant's Response to Amended Motion To Compel Deposition of Jill

Dutcher."[10] that persuades the Court that Agent Dutcher has any testimony that is material to the issues before the Court. The topics identified in Plaintiff's unsolicited memorandum are simply immaterial to the issues before the Court in this case. The topics all appear to relate to Plaintiff's contention that because his employees stole from the companies, his wilful failure to pay taxes is somehow excused. The Court has rejected that contention and concludes that Ms. Dutcher does not have any testimony that is material to the issues in this case.

### III.  ORDER AND RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Deposition Testimony of Jill Dutcher [#112 and #114] is **DENIED**.

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Summary Judgment [#88] be **GRANTED** and Plaintiff's Motion to Dismiss for Lack of Jurisdiction [#97] be **DENIED**.


DATED: January 14, 2009               *s/ Franklin L. Noel*
                                      FRANKLIN L. NOEL
                                      United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 3, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's

---

[10] The motion to compel the deposition of Agent Dutcher is a non-dispositive motion. The Reply Memorandum [#136], that Plaintiff filed on the day of the hearing, is an unsolicited memorandum expressly disallowed by Local Rule 7.1(f). For that reason alone, the court could ignore its content. However, as the Court has in fact read the memo it feels compelled to address it.

brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **February 3, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.